LYLE MATTICE AND VIVIEN MATTICE, HUSBAND AND WIFE, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF "MATTICE MOTORS", APPELLANTS, *v.* EMMETT BOTTOM AND LAURRAINE BOTTOM, RESPONDENTS.

No. 4002

October 17, 1957                    316 P.2d 929

*Royal A. Stewart* and *Richard W. Horton,* of Fallon, for Appellants.

*John W. Diehl* and *Mario G. Recanzone,* of Fallon, for Respondents.

## OPINION

By the Court, EATHER, J.:

The trial court entered a judgment for plaintiffs against defendants for $675.75, with costs and an attorney fee of $200, by way of return to plaintiffs of a credit in the principal sum growing out of the delivery by plaintiffs to defendants of an automobile to be credited upon the future purchase of another car by plaintiffs from defendants—defendants having thereafter gone out of business and not having returned the original car or credit to plaintiffs. Appellants in their appeal from the judgment contend: (1) that the complaint failed to state a cause of action; (2) that under the terms of their contract they were in no event entitled to have the credit amount refunded; and (3) that the agreement in question did not require defendants to remain in the automobile business. A more detailed statement of the facts becomes necessary. The contract in question reads as follows:

"MATTICE MOTORS

"DODGE, PLYMOUTH, DODGE 'Job Rated' TRUCKS

"Telephone 221-W

"189 West Williams Avenue

"FALLON, NEVADA.

"June 23, 1954.

"CREDIT MEMO.

"In consideration of a 1950 Ford Club Coupe, Engine No. BOSR—101126, being turned in this date for credit, the following terms will apply: Credit to be applied towards purchase of another car, to be credited upon washout of sale of above described car—$675.75, this amount being the anticipated selling price less 15% overhead. In addition to the above credit the following shall apply.

"Upon purchase of a new Dodge passenger car [an] additional credit (discount) of $224.25.

"Upon purchase of a new Plymouth passenger car, an additional credit (discount) of $174.25.

"Upon purchase of any used car selling for more than $900.00, [an] additional credit (discount) of $99.25.

"All of the above is based on the understanding and agreement that there will be no additional trade-in involved in any car purchased.

"This credit is to the account of Emmett or Laurraine Bottom of Fallon, Nevada, and is non-transferrable, non-revocable, and non-refundable.

"The above agreement of credit shall be valid for a period of 5 (five) years from date, after which time, if this credit shall have not been used, such credit shall expire.

"MATTICE MOTORS
"Lyle Mattice.

"/s/ Emmett Bottom.
"Accepted: Emmett Bottom."

The court found the due execution of the credit memo and that its material provisions were "that plaintiffs were to have credit in the sum of $675.75 towards the purchase of another car; that defendants are no longer

engaged in the business of dealing in new and used vehicles, and that the business known as Mattice Motors is no longer operating as a going business; that plaintiffs cannot purchase an automobile under the 'credit memo' and are entitled to a refund in the sum of $675.75."

(1) Appellants contend that the complaint does not state a cause of action because it does not allege the occurrence of a "washout sale" of the car, asserted to be a condition precedent. The point is not well taken. The language of the "credit memo" may be more reasonably interpreted as fixing the credit at the stated amount of $675.75 even if the sale produced less, with further credits in addition if a new Dodge or a new Plymouth should be purchased by respondents, and as fixing such credit whether or not appellants sold respondents' car. Appellants further attack the complaint as relying on the fact that appellants had gone out of the automobile selling business, while the agreement did not require them to remain in such business, and nothing negatived their ability to sell respondents their choice of a Dodge, Plymouth, etc., out of a catalogue selection. This is not convincing. Referring to this allegation, and the proof in its support, the trial court said: "They have no automobiles to sell. Their shop is empty. By some act of the defendant himself he has made it impossible to perform according to the terms of this memo."

(2) It is further contended that plaintiffs neither alleged nor proved a demand for performance or any refusal of the defendants to perform. If the allegation that defendants had gone out of business showed impossibility of performance, as the trial court held and as we think it did, a demand would have been a vain act and was not required. And as to the proof, there was substantial evidence to support the court's finding.

(3) Error is assigned in the court's permitting one of the plaintiffs to testify over defendants' objection that a sign on the closed door of defendants' shop said that it had been closed by the Bureau of Internal Revenue; that this was in violation of the best evidence rule. If so, it was not prejudicial. Defendants did not deny this allegation of plaintiffs' complaint.

(4) It is further contended that if, as would reasonably appear, plaintiffs' cause of action is in effect based on a rescission of the contract with demand for return of the consideration, notice of rescission is essential to such cause of action.

While it is frequently stated that notice is prerequisite to an action for restitution, the cases in which it is so held involve receipt by plaintiff from defendant of something of value under the contract, or were of such nature that the defendant, unless so informed, would naturally proceed with performance of his contract. Ordinarily, restitution and compensation being alternative remedial rights, there is no reason for making notice a prerequisite to the election of either. Woodward, The Law of Quasi Contracts, Sec. 267, (V). Or, as succinctly put by Williston on Contracts (Rev.Ed.Sec. 1469), "There seems no reason why a plaintiff who has paid a sum of money for the defendant's promise to give him a horse may not, after breach of his promise by the defendant, wait any period short of that fixed by the Statute of Limitations before deciding whether to sue for the value of the horse or for the recovery of the price."

Neither in the briefs nor the assignment of errors nor the oral argument is the question of measure of damages raised.

Affirmed with costs.

BADT, C. J. and MERRILL, J., concur.